May it please this honorable court, counsel for the government, I'm Norman Reed from Las Vegas, Nevada. I'm appearing on behalf of appellant Michael Bynum. If I may, your honors, I'd like to start with the knock and announce issue. Judges, this is a classic case of forum shopping. What happened in this particular case is that they're completely trying to circumvent Nevada law, which has a strict, very strict knock and announce requirement. There's even testimony on the records that the police officer stated that they intentionally brought this case in the federal court for that particular reason. So what happened to the silver platter doctrine? Is it still alive and well? Is that your argument? It is, Judge, but in addition to that. So they can't, they can do it basically, right? They can do it, but this court still, I want to point that out because I think that's a factor you should consider in determining whether or not there's exigencies. I'm not saying that that would automatically vitiate whether or not the circumstances. This is the first time in the history of the federal judiciary that we've had a state case presented to us for that reason. Is there any dispute to the fact that earlier in the day that he answers the door in only his tube socks and a gun? I mean, don't all people wear that when they answer the door? I haven't addressed that way this morning, but if the court's going into that, if I might respond, I think you have to look at that in a little bit more detail. Yes, there's a gun. I mean, that is a very unusual circumstance in this particular case. I mean, not very many hours before and the behavior that he exhibited that, you know, I even think that people that have been experienced in criminal endeavors, you know, don't usually answer the door that way. Absolutely. And there's no disputing that there was a gun that was present, but you have to take it further and look at the entire application for the search warrant in deciding whether there's exigencies. Most people get their pants before they're done, you know, when they go to the door. It's just a thing for him. Actually, in the first transaction, which appears on January 22nd, the original drug transaction, the gun is actually sitting on the kitchen table. This time he has his clothes on. And then we're at February 4th for our next transaction. This is another undercover buy from the confidential informant. On this particular occasion, Your Honor, there's no gun present at all. And now we fast forward again another couple of weeks, almost now one month from the time in which they knew that there were drugs present in this particular residence. We're talking same residence, same people present. One month later now, he shows up in his socks with his handgun. And I don't think that that's exigency emergency, Your Honor, because you're not challenging the probable cause for the issuance of the search warrant. Absolutely not. In fact, I think there was probable cause back on January 22nd. And that's when we should have been going to the magistrate. And that's when we should have been getting the His findings focus on the emergency in terms of the drugs being possibly disposed of, which is a major concern on all these cases. But their actions, the officer's actions by themselves completely fly in the face of that exigency by having the same person in this transaction. They can't conduct an ongoing drug trafficking investigation and choose for legitimate tactical reasons to wait until some later time in the investigation before they're ready to execute search warrants and make arrests, right? No, I'm not. You're absolutely correct, Your Honor. There's no reason why they can't continue on with these types of investigations. And in fact, there's legitimate police reasons why they do that. Well, then in regard to the exigency analysis, doesn't the case law tell us that, as I guess the Supreme Court recently reminded us in Banks, that we've got to look at the facts basically pertaining to the execution of the warrant at the time it was executed in order to determine whether exigent circumstances existed? I agree. And if I might just make two comments on that. First, in Banks, the court does now say that you have to analyze the absence of a knock-and-announce equivalent with the timeliness of the knock-and-announce and the circumstances behind that. But if you look at the circumstances of what happened in Banks, it's completely different in that case. There was a knock in that case. He's in the shower, he says. Fifteen or twenty seconds later, they're going into the residence. In fact, they knocked so loudly that you could hear the knocks at the back door, the officers testified to, I believe. In our case, we have no knock at all whatsoever. Plus, we have the addiction. But in Banks, we don't have any indication that the either at his side or sitting on the kitchen table during the transaction. That's true, Your Honor. And isn't it the weapon that establishes the exigency along with the fact that drugs are easily disposed of? Well, I think that you have to look at both of those factors in determining whether, and in fact everything, as to whether or not there's exigency. I don't think you should dispel one over the other. But when you look at the findings, the way I read Judge Proh's findings, he didn't give a lot of explanation as to how the gun worked into his determination of the exigency. He relied apparently more on the drug aspect of it. I mean, how much more does the court have to find other than the fact that we have this behavior that can only be characterized as unusual seven hours earlier where Banks shows up naked but for tube socks with a chambered automatic pistol at his side? What more does the court need to find in establishing a potential danger to the officers should they later execute a search warrant? Again, Your Honor, there's more to this case than just that. They set off four omni-blast devices at the time of entry. They set off two prior to entry and two actually having entry. That goes to the force used to execute the warrant. I want to focus on whether or not they can dispense with the knock and announce requirement. But that's a factor in determining that. Clearly, once they're throwing stun grenades, they're announcing their entry. So the question is, are they, may they lawfully dispense with the knock and the prior warning that they're about to enter? No, because I think you have to look at that as a factor. You have to consider that they, their own testimony is that they apply these concussion devices in order to lessen the opportunity of having an officer injured. Right. I mean, so that, that has to be a factor in your analysis, Your Honor, I believe. In establishing the exigency? Absolutely. Establishing the reasonableness of the force that's employed in executing the warrant. I see that as two separate legal issues. I'm not, I guess I'm not quibbling with you that it's relevant to look at it, but in terms of deciding whether or not they can abandon the prior notice, which is the purpose of knocking before they enter, don't we stop at that point and ask, what facts did the police know when they made the determination to enter without knocking and announcing? Well, maybe we're both saying the same thing in different ways. You're, I agree with the court in terms of, you have to look at what facts they knew at the time about whether or not they should dispel with a knock and announce. But in doing so, you have to look at the, all of the police conduct starting from January 22nd and right up to that day, which would include, Your Honor, the fact that if they're going to be so concerned about this presence of this weapon and the drugs being destroyed, why don't they secure the premises? Why do they wait seven hours and get a written search warrant when they can get a telephonic search warrant in 30 minutes or less? Obtaining search warrants, you and I both know, takes time, even if it's a telephonic warrant. That's correct, Your Honor, but they can secure the premises. By securing the premises, though, you're talking about basically putting surveillance on it to see whether or not, I mean, they can't do anything more than that without the warrant, right? That's correct, Judge. Okay. So let's go back to my earlier question, which is, once Judge Breaux determined that this guy had sold drugs as recently as seven hours before, that he was using or in possession of a loaded weapon during at least two of the three prior drug transactions, what more does he need in order to support the legal conclusion that there were exigent circumstances and a legitimate threat to the safety of the searching officers to dispense with the knock-and-announce requirement? Because, Your Honor, when you look at the circumstances, they dispelled with the knock-and-announce requirement without just cause. They didn't have to do that in this case, even despite the fact that they were in possession. What undercuts the safety finding that the guy answered the door with a chambered weapon in his hand? The prior transactions that they had with him, the fact that they supposedly knew he was an ex-felon, yet did nothing about arresting him on the previous occasions, the fact that they delayed without securing the perimeter seven hours in obtaining the warrant, the fact that they asked for a nighttime search warrant from the neutral magistrate, but made no mention of the necessitating a knock-and-announce. We don't even know if the door was locked, you know, Judges. I mean, it was closed. That's all we know. Okay. You've almost used your time. We'll give you a minute for a rebuttal. I appreciate that, Your Honor. Thank you. May it please the Court. My name is Ray Gatinella, and I'm an assistant United States attorney from the District of Nevada. Your Honor, the trial court did not err in finding  requirement. Not only under the Fourth Amendment to the U.S. Constitution, but 18 U.S.C. Section 3109, under these circumstances. This is a case, Your Honors, where exigent circumstances were, in fact, present. And I would just like to highlight a few things that were mentioned to you. First off, with regard to the Banks case that was mentioned earlier, I would point out that Banks did state that there was no reason to treat a no-knock entry with exigency any different from a post-knock entry with exigency. Okay. Now, although Banks did deal with a situation where, in that particular case, the officers did knock and announce before making the entry, nonetheless, the Court still applied an exigency analysis, and that same analysis should also be applied in no-knock situations. In the case that we have that's been mentioned, I would like to also further state to the Court that in the excerpts of record, or the supplemental excerpts of record, I believe it's on page 6, when it talks about the February 4th purchase. We have three purchases of cocaine from this defendant. January 22nd, February 4th, and February 26th. On the January 22nd purchase by the confidential informant, we do know that the defendant was, in fact, in possession of a handgun. The February 4th transaction, if you look to the body of the warrant, you'll notice that the confidential informant stated he never actually saw the defendant, that he was in the back room. So we really do not know whether or not he was in possession of a handgun. He very well may have been, but we do know that the confidential informant didn't see one on that particular occasion. On February 26th, what do we know? We know that, as was pointed out, that the defendant comes to the door undressed, holding a black semi-automatic handgun in his right hand to his side. He then goes in, speaks to a female, comes back out with shorts, still holding that semi-automatic in his hand, then conducts the crack cocaine transaction. But does he stop there? No. He then follows the undercover officer outside, holding the gun, looking at him, doing counter surveillance to see if police are in the area. And I submit to the Court that that conduct of holding that handgun to his side can be interpreted as a nonverbal threat at that point, a threat not to in any way impose your will on this particular individual, or he will respond with force, and that force is in his right hand. The cases that were pointed out in the defendant's brief can be distinguished from the facts of this case. In none of the cases that the defendant has asserted have we had cases, a case like this, where you have such a short time span of just seven hours. What do we know? We know the defendant has been observed twice in the last five weeks. On both of those occasions, he was in possession of a handgun. Okay? Even if we were to say and give him the benefit of the doubt that on February 4th he was not in possession of a handgun, we would know that three times. And we are to look at the reasonableness of the officer prior to the execution of the search warrant. What reasonable officer under these circumstances would go to this defendant's door knowing that he was – that he answers that door holding a semiautomatic weapon on two prior occasions and would knock and announce, police, we're going to execute a warrant. I submit to the Court that a reasonable police officer would not under these circumstances do that. With regard to the defendant's second argument that the search exceeded the scope of the warrant, I submit to the Court that under these circumstances the plain view doctrine applies and that officers may not only seize items that they are looking for in a search warrant, but in the course of conducting that lawful search, if they come across other items that are incriminating in nature, they may then seize those under the plain view doctrine. And nowhere in the record does it indicate that the officers did not have a right to look in the couch where the handgun was found or in the closet where the shotgun was found. Thank you. I just might comment on the plain view portion of my argument since I didn't address that previously. The only thing I want to point out for the record is that that was never really fully addressed by the district court. There were never any findings made on it. The court declined to rule on it, correct? It did, Your Honor. And as I understand it, your client then entered a conditional guilty plea in order to challenge the court's ruling after the suppression hearing. And the only ruling that was extant at that point was with regard to the issue you argued. That's correct, Judge. So haven't you waived the challenge to the plain view argument? You could still address it under Clery or I would submit to the Court a higher standard and we don't have adequate findings. My only request would be in that regard. And I think it's a clearly erroneous standard. Thank you very much for the Court's time. Thank you. Thank you both counsel. It was very well argued. The case just argued is submitted and we'll hear the next case which is Cherry      Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Schroeder, Tallman, Callahan